# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| CLAYTON HAUGEN, | Case No. 2:21-cv-00035-JRG |
| Plaintiff, | |
| v. | |
| ACTIVISION PUBLISHING, INC. et al., | |
| Defendants. | |

## DEFENDANTS ACTIVISION PUBLISHING, INC., ET AL.'S MOTION TO TRANSFER VENUE

## **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................1

II.     FACTUAL BACKGROUND ....................................................................................2

        A.      This Case Lacks Any Ties to the Eastern District of Texas. ...................2

        B.      Plaintiff Purchases *Call of Duty: Modern Warfare* and
                Agrees to the Terms of Use, Including the Forum Selection Clause.......................3

III.    DISCUSSION ............................................................................................................4

        A.      This Case Should Be Transferred to the Central District
                of California Pursuant to 28 U.S.C. § 1404(a) Because the Private and Public
                Factors Favor Transfer. ..........................................................................................4

                1.      This Case Could Have Been Brought in the Central
                        District of California ...................................................................5

                2.      The Private Factors Collectively Favor Transfer.........................5

                        a.      Relative Ease of Access to Sources of Proof ...................5

                        b.      Availability of Compulsory Process to Secure
                                Attendance of Witnesses ................................................6

                        c.      The Cost of Attendance for Willing Witnesses ...............8

                        d.      All Other Practical Problems That Make Trial
                                of a Case Easy, Expeditious, and Inexpensive................9

                3.      The Public Factors Collectively Favor Transfer. ........................9

                        a.      Administrative Difficulties Flowing from
                                Court Congestion ...........................................................9

                        b.      Local Interest in Having Localized Interests
                                Decided at Home............................................................10

                        c.      Familiarity of the Forum with the Governing
                                Law and Avoidance of Unnecessary Conflict of Law ..................10

                4.      Summary of the Factors ............................................................10

        B.      The Claim Against Activision Publishing, Inc. Should Be
                Further Transferred to the Central District of California
                Pursuant to 28 U.S.C. § 1404(a) Because Haugen Agreed
                to a Forum Selection Clause with Activision Publishing, Inc. ..............11

                1.      The Forum Selection Clause is Mandatory and Enforceable....................11

i

2.      The Forum Selection Clause Covers All Claims Between
        the Parties that Are Not Arbitrable. ........................................................12

3.      Section 1404 Compels Transfer to the Central District
        of California. ..............................................................................................13

4.      Summary .....................................................................................................15

IV.   CONCLUSION.................................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashall Homes Ltd. v. ROK Entm't Grp. Inc.*,
992 A.2d 1239 (Del. Ch. 2010)..........................................................................11, 12

*Atlantic Marine Constr. Co., Inc. v. United States Dist. Court for W. Dist. Tex.*,
571 U.S. 49 (2013)..............................................................................................13, 14

*Aveta, Inc. v. Colon*,
942 A.2d 603 (Del. Ch. 2008)....................................................................................12

*Barnett v. DynCorp Int'l, L.L.C.*,
831 F.3d 296 (5th Cir. 2016)......................................................................................11

*Frederick v. Advanced Fin. Sols., Inc.*,
558 F. Supp. 2d 699 (E.D. Tex. 2007).........................................................................4

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947).................................................................................................4, 5

*Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*,
321 F.2d 53 (5th Cir. 1963) ........................................................................................4

*Loeb-Defever v. Strategic Constr., Ltd.*,
No. 4:19-cv-00578, 2020 WL 2496883 (E.D. Tex. May 14, 2020) ...........7, 8, 9, 10

*Marinechance Shipping, Ltd. v. Sebastian*,
143 F.3d 216 (5th Cir. 1998) ....................................................................................12

*In re Radmax, Ltd.*,
720 F.3d 285 (5th Cir. 2013) ..................................................................................5, 6

*In re Rolls Royce Corp.*,
775 F.3d 671 (5th Cir. 2014) ....................................................................................14

*Uniloc 2017 LLC v. Google LLC*,
No. 2:18-cv-00504-JRG-RSP, 2020 WL 3064460 (E.D. Tex. June 8, 2020) ....4, 10

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ...............................................................................4, 5, 6

*In re Volkswagen of Am.*,
545 F.3d 304 (5th Cir. 2008) ..................................................................................5, 6

*Weber v. PACT XPP Techs., AG*,
    811 F.3d 758 (5th Cir. 2016) ......................................................................................11, 12, 14

**Statutes**

28 U.S.C. § 1404(a) ........................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 45 ....................................................................................................................6, 7

## I.     INTRODUCTION

This is a case of alleged copyright infringement that has no ties to the State of Texas. Plaintiff Clayton Haugen ("Plaintiff") alleges that a character in *Call of Duty: Modern Warfare*, a videogame developed and published in California, infringes Plaintiff's copyrights. The parties have nothing whatsoever to do with Texas.  By his own admission, Plaintiff is a resident of North Carolina and does business in Arizona.  Defendants Activision Publishing, Inc., Activision Blizzard, Inc., Infinity Ward, Inc., and Major League Gaming Corp. (collectively, "Defendants") do business in the Central District of California and have no offices in this District.

Both the private and public Section 1404(a) factors collectively favor transfer.  No witness or party to this case lives or works in the Eastern District of Texas; the Plaintiff does not even allege that he has ever visited this district.  Instead, key third-party witness Petrol Advertising operates out of Burbank, California, which is in the Central District of California. Other third-party witnesses are located in Los Angeles.

The copyrighted works were not created in Texas.  None of the activities giving rise to the alleged infringement occurred in Texas.  None of the witnesses are located in Texas.  No documents are located in Texas.  The only tie this case has to the State of Texas is the fact that Plaintiff's counsel live in Houston and Dallas (which is irrelevant under Fifth Circuit precedent) and that copies of *Call of Duty: Modern Warfare* have been purchased in the Eastern District of Texas (which is not enough under Fifth Circuit precedent).  This case should have been filed in the Central District of California, and it should be transferred there.

Furthermore, Plaintiff expressly agreed to a forum selection clause that requires this case to be transferred to the Central District of California. When he licensed and began playing *Call of Duty: Modern Warfare*, he "irrevocably consent[ed] to the exclusive jurisdiction and venue of state or federal courts in Los Angeles County, California to resolve," among other things, claims

for "copyright infringement."  Therefore, Haugen has agreed to the venue of the Central District of California to resolve his intellectual property disputes with Activision Publishing, Inc., and claims against that entity can proceed only in the Central District of California.

## II.     FACTUAL BACKGROUND

### A.     This Case Lacks Any Ties to the Eastern District of Texas.

Plaintiff is a resident of North Carolina who does business in Arizona.  Compl. ¶ 6, ECF No. 1.  On February 2, 2021, he brought this action against Defendants asserting a single cause of action for copyright infringement.  *See id.* ¶ 49.  The theory underlying this claim is that Defendants, in designing a character for the video game *Call of Duty: Modern Warfare*, copied photographs Plaintiff created of a character named Cade Janus for a story called *November Renaissance*.  *See id.* ¶¶ 1–5, 18.  Plaintiff alleges he directed the styling of and took photographs of a model as Cade Janus.  *Id.* ¶ 22.  Plaintiff also identifies a document created by third party Petrol Advertising of being one instance of infringement and as indicative of Defendants' access to Plaintiff's works.  *Id.* ¶ 31–32; Gratz Decl. ¶ 2; Ex. A.

According to his publicly-available LinkedIn profile and an internet post by Plaintiff, Plaintiff was conducting business in Arizona during the creation of the copyrighted works and developed *November Renaissance* in Arizona.  *See* Gratz Decl., Ex. C, D, E.  Plaintiff worked with then Los Angeles resident, Michael Gee, in developing *November Renaissance*. *Id.*, Ex. D, E. There is no allegation that the allegedly infringing works were created, in whole or in part, in Texas.  Instead, the complaint alleges that venue is appropriate because units of the *Modern Warfare* were eventually distributed at a Gamestop store in the Eastern District of Texas. Complaint ¶ 16.  The complaint does not identify any witnesses or documents in the Eastern District of Texas.  *See generally id.*

**B.     Plaintiff Purchases *Call of Duty: Modern Warfare* and Agrees to the Terms of Use, Including the Forum Selection Clause.**

Plaintiff licensed and began playing *Call of Duty: Modern Warfare* on or about November 27, 2019.  Butcher Decl. ¶ 4; Ex. B.  In order to play the game, Plaintiff affirmatively accepted and agreed to Activision Publishing's Software Terms of Use (the "Agreement").  Butcher Decl. ¶¶ 3, 5–10; Ex. A, C, D, E.  Plaintiff could have declined the terms of this Agreement within thirty days and received a full refund.  *Id.*

The Agreement contains terms governing the way that disputes relating to the game must be brought.  Butcher Decl., Ex. A, ¶ 16.  The Agreement requires that certain disputes be resolved through arbitration, and that other disputes are subject to exceptions to the arbitration agreement.  *Id.*  One such exception is "Litigation of Intellectual Property" claims.  This provides that "either party may bring an action in state or federal court that only asserts claims for . . . copyright infringement . . . ."  *Id.*  Thus, the Agreement expressly contemplates that claims for copyright infringement that relate to the game fall within the scope of the Agreement's dispute-resolution provisions.

The Agreement limits the courts in which copyright infringement claims can be brought. It provides that those who accept the Agreement "irrevocably consent to the exclusive jurisdiction and venue of state or federal courts in Los Angeles County, California to resolve any claims that are subject to the exceptions to the arbitration agreement described in BINDING ARBITRATION AND CLASS ACTION WAIVER above, or otherwise determined not to be arbitrable."  *Id.* ¶ 17(A).

## III.    DISCUSSION

### A.    This Case Should Be Transferred to the Central District of California Pursuant to 28 U.S.C. § 1404(a) Because the Private and Public Factors Favor Transfer.

28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a). The threshold inquiry when analyzing a case's eligibility for a Section 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004) (citation omitted).  Once that threshold is met, courts analyze both "private" and "public" factors to determine whether transfer is appropriate.  *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963).  The private and public factors are sometimes referred to as the *Gilbert* factors.  *See Volkswagen I*, 371 F.3d at 206 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)).

While "traditionally" the "plaintiff's choice of forum" was a "strong factor that weighs against transfer," "[r]ecently . . . the Fifth Circuit concluded that district courts should deem the plaintiff's choice of forum less important."  *Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 2d 699, 703 (E.D. Tex. 2007) (citing *In re Horseshoe Entertainment*, 337 F.3d 429 (5th Cir. 2003)).  Indeed, "plaintiff's choice of venue is not a factor in this analysis" at all.  *Uniloc 2017 LLC v. Google LLC*, No. 2:18-cv-00504-JRG-RSP, 2020 WL 3064460, at *2 (E.D. Tex. June 8, 2020) (citing *In re Volkswagen of Am.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*Volkswagen II*")).  Instead, "the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is 'clearly more convenient' than the transferor venue."  *Id.*  And "[t]he plaintiff's forum choice is given less weight when the plaintiff brings suit **outside of its home district**."  *Frederick*, 558 F. Supp. 2d at 703 (emphasis added).

Here, plaintiff has brought suit outside of his home district, and therefore, his choice of forum should be given even less weight relative to the *Gilbert* factors.

### 1.    This Case Could Have Been Brought in the Central District of California.

The facts of this case satisfy the threshold inquiry:  This case could have been brought in the Central District of California.  Each of the Defendants has its principal place of business in the Central District of California.  Roux Decl. ¶¶ 2-5; 9.  Further, as will be discussed below, Plaintiff agreed to the "exclusive jurisdiction and venue of state or federal courts in Los Angeles County, California." Therefore, venue in the Central District of California is proper.

### 2.    The Private Factors Collectively Favor Transfer.

The private interest factors are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *Volkswagen I*, 545 F.3d at 315.  Of these factors, "[n]one . . . can be said to be of dispositive weight."  *Id.* (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)).  Each of these private factors favor transfer.

### a.    Relative Ease of Access to Sources of Proof

The sources of proof will be, in relative terms, easier to access in the Central District of California as compared to this district.  On at least two occasions, district courts that have attempted to minimize this factor because of the modern relative ease of transporting documents have been overturned on mandamus.  *See Volkswagen I*, 545 F.3d at 316; *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).  But in the Fifth Circuit, as elsewhere, the ***relative*** ease of access to proof still matters: "That access to some sources of proof presents a ***lesser inconvenience now than it might have*** absent recent developments does not render this factor

superfluous." *Volkswagen I*, 545 F.3d at 316 (emphasis added).  Furthermore, even if "such inconvenience may well be slight . . . the question is ***relative*** ease of access, not ***absolute*** ease of access." *In re Radmax*, 720 F.3d at 288 (emphasis added).  In *In re Radmax*, the court considered the relative convenience of the Eastern District's Tyler or Marshall divisions, one just sixty miles from the other.  The court, after noting that all documents and physical evidence were located in Tyler, transferred the case from Marshall to Tyler.  *Id.*  Where "all of the documents and physical evidence . . . are located" elsewhere, the factor "does weigh in favor of transfer." *Volkswagen I*, 545 F.3d at 316.

Here, the relative ease of access to proof favors transfer.  ***None*** of the sources of proof for this case are even in the State of Texas—much less the Eastern District.  Instead, nearly all of the documents, physical evidence, and other sources of proof for this case are located at Defendants' places of business in the Central District of California or, quite likely, at Plaintiff's place of business in Arizona.  Furthermore, third party Petrol Advertising, whose work product is referenced in the complaint as a source of infringement, is likely to have discoverable material that is also located in the Central District of California.  Compl. ¶¶ 31–33.  It would be more convenient to transport Plaintiff's documents to the Central District of California from the District of Arizona and to keep Defendants' and Petrol's business records there than it would be to transfer all these documents to Texas.  This factor favors transfer the District of Central District of California.

> **b.**   **Availability of Compulsory Process to Secure Attendance of Witnesses**

"Pursuant to Federal Rule of Civil Procedure 45, a federal district court can command non-party witnesses located more than 100 miles from the courthouse to comply with a subpoena provided the witness resides, is employed, or regularly transacts business within the state and

would not incur substantial expense by complying." *Loeb-Defever v. Strategic Constr., Ltd.*, No. 4:19-cv-00578, 2020 WL 2496883, at *5 (E.D. Tex. May 14, 2020) (citing *Potter v. Cardinal Health 200, LLC*, No. 2:19-cv-00007, 2019 WL 2150923, at *3 (E.D. Tex. May 16, 2019)); *see also* Fed. R. Civ. P. 45(c)(1)(B)(i)-(ii).

A key nonparty witness in this case is Petrol Advertising.  Plaintiff alleges that Defendants accessed Plaintiff's work through a document called "Project Odyssey," which was created by Petrol and produced to Plaintiff's counsel by Petrol in discovery in an unrelated case. Compl. ¶¶ 31–32; Gratz Decl ¶ 2; Ex. A, B.  Thus, this document, its creation, purpose and distribution are key to Plaintiff's allegations.  Petrol Advertising does not reside or have an office in Texas; it does business in Burbank, California.  Nor, to Defendants' knowledge, does Petrol regularly transact business in the state of Texas.

Therefore, compulsory process will not be available to compel Petrol witnesses to appear. Transfer of this case to the Central District of California resolves this issue.  As a Burbank, California business, Petrol resides within the 100-mile radius of the courthouse, and the court would therefore have the power to compel it to appear.  Gratz Decl., Ex. F.

In addition, there are former employees of Defendants that reside in the Central District of California and have information relevant to the accused video game.  For example, Jason Ades was a Senior Producer who worked on *Modern Warfare* and Byron Beede was the Executive Vice President and General Manager of *Call of Duty*.  Roux Decl. ¶ 12.  These individuals are no longer employees of Defendants, but reside within a 100-mile radius of the Central District of California.  *Id.*

In addition, Plaintiff alleges that he created the photographs at issue in this case to "'pitch' *November Renaissance* to film studios." Compl. ¶ 22.  According to Plaintiff's internet

post, at least two such pitches were to studios located in Los Angeles, California, including Fox Studios.  Gratz Decl. Ex. E, at p. 5.  These film studios will have important information about Plaintiff's allegations regarding the alleged use and importance of these photographs in these pitch meetings.  These film studios are not subject to compulsory process in this District, but would be if the case were transferred to the Central District of California.

Further, Plaintiff created *November Renaissance* with an individual named Michael Gee.  According to a Kickstarter campaign launched by Gee and Plaintiff, Gee appears to have been located in Los Angeles, California as of 2019.  Gratz Decl. Ex. D.

Thus, a multitude of key third party witnesses are subject to compulsory service of process in the Central District of California and not the Eastern District of Texas.

This factor weighs heavily in favor of transfer.

### c.      The Cost of Attendance for Willing Witnesses

The third factor, the convenience of non-party witnesses, "is the more important consideration in a transfer of a venue analysis."  *Loeb-Defever*, 2020 WL 2496883, at *6. (citing *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000)).  "So, while the location of party witnesses may factor into transfer analysis, it is the location of key, non-party witnesses that dominates."  *Id.*

Petrol, the key non-party witness, would incur substantial expense traveling to the Eastern District of Texas.  The court has previously held that traveling ***over 200 miles*** from the Southern District of Texas would cause a witness to incur substantial expense.  *Loeb-Defever*, 2020 WL 2496883, at *5 (substantial expense incurred by witnesses travelling 264 miles and 322 miles).  Los Angeles is 1586.43 driving miles from Marshall, Texas.  Gratz Decl., Ex. G.  Petrol would incur substantial expense in appearing in Marshall, Texas for trial.

No witness, party or non-party, resides in the Eastern District of Texas, and key witness Petrol Advertising resides in California, as do other potential trial witnesses.  Because the key witnesses are located closer to the Los Angeles courthouse than the Marshall courthouse, this factor weighs heavily in favor of transfer.

> **d.      All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive**

As explained above, the party witnesses in this case are located either in Arizona or California.  Further, there is no nexus between the allegedly infringed work and the alleged infringement and the State of Texas.  Because of the location of the parties, it would be simpler and more economical to try the case in the Central District of California.  There are no practical problems with trying the case in the Central District of California.  In addition, Haugen's claim against Activision Publishing must be transferred, and it would be more judicially efficient to try all claims in the same forum (the Central District of California).  This factor therefore also favors transfer.  *See Loeb-Defever*, 2020 WL 2496883, at *7 (fourth factor weighs in favor of transfer where most of the defendants are in a different judicial forum, and plaintiff's choice of venue "has little to no factual nexus to the present case").

In sum, all private factors favor transfer.

> **3.      The Public Factors Collectively Favor Transfer.**

> **a.      Administrative Difficulties Flowing from Court Congestion**

Both the Eastern District of Texas and Central District of California are capable of administrating litigation and a trial.  There is no reason why one district is more administratively capable of handling such litigation or trial than another.  Therefore, this factor is neutral.

### b.      Local Interest in Having Localized Interests Decided at Home

The Eastern District of Texas has no localized interest in deciding this case.  The alleged copying of the work took place in California, as did the development, marketing, and publishing of the game.  *See Loeb-Defever*, 2020 WL 2496883, at *4 (second factor weighs in favor of transfer where "Plaintiffs have not alleged that any of the underlying acts or omissions occurred in the Eastern District").  Haugen lives in North Carolina and works in Arizona, far from this district.  The mere allegation that units of *Modern Warfare* were sold in Texas is not sufficient to give rise to a local interest in the matter because there is no allegation that anyone in the Eastern District of Texas is harmed by these sales.

By contrast, the Central District of California has a strong interest in knowing about and preventing alleged copyright infringement from occurring in its district.  California will therefore have a strong interest in this lawsuit.

This factor therefore favors transfer.

### c.      Familiarity of the Forum with the Governing Law and Avoidance of Unnecessary Conflict of Law

This case concerns federal copyright law.  Federal courts are presumed to have equal familiarity with federal laws.  Further, there are no immediately identifiable conflicts of law relevant to this case.  Therefore, these two factors are also neutral.  *See Uniloc*, 2020 WL 3064460, at *6.

One of the public interest factors weighs in favor of transfer, and three are neutral.

### 4.      Summary of the Factors

In summary, five of the eight factors favor transfer, three of the eight factors are neutral, and ***none*** of the eight factors favor this case remaining in the Eastern District of Texas, where no documents or witnesses are located.  As a group, these factors favor transfer.

**B.    The Claim Against Activision Publishing, Inc. Should Be Further Transferred to the Central District of California Pursuant to 28 U.S.C. § 1404(a) Because Haugen Agreed to a Forum Selection Clause with Activision Publishing, Inc.**

Haugen agreed via a forum selection clause to litigate all claims against Activision Publishing, Inc. in Los Angeles County.  That clause should be enforced, and this is an additional reason to transfer the case to the Central District of California.

### 1.    The Forum Selection Clause is Mandatory and Enforceable.

Courts recognize a "sharp distinction between mandatory and permissive [forum selection clauses]."  *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016); *see also Ashall Homes Ltd. v. ROK Entm't Grp. Inc.*, 992 A.2d 1239 (Del. Ch. 2010).[1]  "A mandatory [forum selection clause] affirmatively requires that litigation arising from the contract be carried out in a given forum."  *Weber*, 811 F.3d at 768.  "Only mandatory clauses justify transfer or dismissal."  *Id.*  "A[] [forum selection clause] is mandatory only if it contains clear language specifying that litigation *must* occur in the specified forum[.]"  *Id.*

The forum selection clause here is clearly mandatory: it states that the state and federal courts of Los Angeles County, California provide the "*exclusive*" venue "to resolve any claims" for copyright infringement and that the parties "irrevocably consent" to this venue for those claims.  Butcher Decl., Ex. A, ¶ 17(A) (emphasis added).  The parties agreed that this venue and only this venue will govern any non-arbitrated disputes.  In other words, the parties agree that the venue for copyright infringement claims must be Los Angeles County courts.

---

[1] The Fifth Circuit has left open whether the validity and enforceability of a forum selection clause is a matter of state or federal law.  *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 303 (5th Cir. 2016).  The contract provides for Delaware state law.  Defendants do not see a material difference between federal law and Delaware state law on this issue, and provide parallel citations to both Fifth Circuit and Delaware decisions for that reason.

The clause is enforceable as well.  The Fifth Circuit applies a "strong presumption in favor of the enforceability of mandatory [forum selection clauses]."  *Weber*, 811 F.3d at 773 (citing *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997)); *see also Aveta, Inc. v. Colon*, 942 A.2d 603, 607 n.7 (Del. Ch. 2008).  This presumption of enforceability is only overcome in certain express circumstances, none of which are present here.  *Weber*, 811 F.3d at 773 (quoting *Haynsworth*, 121 F.3d at 963).

Therefore, the clause is mandatory and enforceable.

### 2.    The Forum Selection Clause Covers All Claims Between the Parties that Are Not Arbitrable.

The Court must also decide whether the clause covers the Plaintiff's claim.  *See, e.g.*, *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216 (5th Cir. 1998).  The court must "look to the language of the parties' contracts to determine which causes of action are governed by the forum selection clauses."  *Id.* at 222; *see also Ashall Homes*, 992 A.2d at 1252 (a forum selection clause cannot be defeated by "artful pleading of claims").

Here, Plaintiff's claim plainly relates to the software program that is the subject of the Agreement—*Call of Duty: Modern Warfare*. Further, the language that governs the forum selection clause encompasses claims between the parties that either "are subject to exceptions to the arbitration agreement described in BINDING ARIBITRATION AND CLASS ACTION WAIVER" or are "otherwise determined not to be arbitrable."  Butcher Decl., Ex. A, ¶ 17(A) (Software Terms of Use).  The BINDING ARBITRATION AND CLASS ACTION WAIVER section of the contract explicitly identifies copyright infringement claims relating to the game as one of the "exceptions to the arbitration agreement."  *Id.* ¶ 16.  Therefore, the contract unambiguously and expressly contemplates that an intellectual property claim that arises between the parties relating to the game falls within the scope of the Agreement and expressly

identifies those claims as non-arbitrable and subject to the forum selection clause establishing the exclusive venue of Los Angeles County.

The broad scope of the Agreement and its forum selection clause is reinforced by the language governing initial dispute resolution prior to bringing an arbitration claim: the contract contemplates that "***any concerns you may have*** *regarding* [*Modern Warfare*]" are to be raised through an informal dispute resolution process, which is followed by the binding arbitration procedure and exceptions to that procedure.  *Id* ¶ 16.  This copyright claim is a "concern[] [Haugen] may have regarding [*Modern Warfare*]"; i.e., that it allegedly includes his copyrighted material.  Therefore, it is expressly contemplated by, and within the scope of, the dispute resolution provisions of the Agreement.

Because copyright infringement claims "are subject to the exceptions to the arbitration agreement," they may only be brought in the "exclusive . . . venue of state or federal courts in Los Angeles, County, California."

### 3.    Section 1404 Compels Transfer to the Central District of California.

The Section 1404(a) analysis changes in three ways when a forum selection clause is present.

"First, the plaintiff's choice of forum merits no weight. . . . [W]hen a plaintiff agrees by contract to bring suit only in a specified forum . . . the plaintiff has effectively exercised its 'venue privilege' before a dispute arises.  Only that initial choice deserves deference[.]"  *Atlantic Marine Constr. Co., Inc. v. United States Dist. Court for W. Dist. Tex.*, 571 U.S. 49, 63 (2013).

"Second, a court . . . should not consider arguments about the parties' private interests.  When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of

the litigation." *Id.* at 64.  "A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.*

Therefore, the private factors weigh entirely in favor of transfer for Activision Publishing.  "The only remaining question is whether this is one of the rare cases in which the public interest FNC factors favor keeping a case despite the existence of a valid and enforceable [forum selection clause]." *Weber*, 811 F.3d at 775–76.  This is not one of those rare cases; the public interest factors collectively favor transfer as well, as explained above.

In the event that the other parties are not transferred, the Fifth Circuit has identified additional factors to consider when transfer of claims against a single party requires severance and transfer:

> First, pursuant to *Atlantic Marine*, the private factors of the parties who have signed a forum selection agreement must, as a matter of law, cut in favor of severance and transfer to the contracted for forum.  Second, the district court must consider the private factors of the parties who have *not* signed a forum selection agreement as it would under a Rule 21 severance and section 1404 transfer analysis.  Finally, it must ask whether this preliminary weighing is outweighed by the judicial economy considerations of having all claims determined a single lawsuit.

*In re Rolls Royce Corp.*, 775 F.3d 671, 681 (5th Cir. 2014)

As a matter of law, the private factors favor severance of Activision Publishing, Inc. and transfer.  The private factors of the parties who have not signed a forum selection agreement also favor transfer under Section 1404(a), as explained above.  There will be no judicial economy considerations weighing against transfer because the case can be effectively managed using multidistrict litigation procedures.  *See id.* at 681–82 (noting that "a large percentage of the federal judiciary's business is conducted through the use of multidistrict litigation process.").

### 4.     Summary

The forum selection clause is both mandatory and enforceable.  It encompasses this claim because the claim is nonarbitrable.  The private interest factors all weigh in favor of transfer as a matter of law; the public interest factors also weigh in favor of transfer.  Activision Publishing, Inc., at minimum, should be severed and the case against it transferred to the Central District of California.

## IV.     CONCLUSION

For the reasons stated above, this action should be transferred to the Central District of California for all defendants.

Dated:  April 26, 2021                              DURIE TANGRI LLP

By: _____*/s/ Joseph C. Gratz*_____
JOSEPH C. GRATZ (CA SBN 240676)
jgratz@durietangri.com
JESSICA E. LANIER (CA SBN 303395)
jlanier@durietangri.com
CATHERINE Y. KIM (CA SBN 308442)
ckim@durietangri.com
AARON J. BENMARK (CA SBN 312880)
abenmark@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:     415-362-6666
Facsimile:     415-236-6300

MELISSA R. SMITH (TX SBN 24001351)
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone:     903-934-8450
Facsimile:     903-934-9257

*Counsel for Defendants*
*Activision Publishing, Inc., Activision Blizzard, Inc.,*
*Infinity Ward, Inc. and Major League Gaming*
*Corp.*

## **CERTIFICATE OF CONFERENCE**

I hereby certify that Defendant's counsel met and conferred with Plaintiff's counsel pursuant to Local Rule CV-7(h) regarding the substance of this motion.  Plaintiff's counsel indicated that Plaintiff opposes this motion.

*/s/ Melissa R. Smith*
MELISSA R. SMITH

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2021 the within document was filed with the Clerk of

the Court using CM/ECF which will send notification of such filing to the attorneys of record in

this case.

*/s/ Melissa R. Smith*
MELISSA R. SMITH
